**In re The MONTALDO CORP.,**
**d/b/a Montaldo's, Debtor.**

**Aetna Life Insurance Co., Appellant,**

**v.**

**The Montaldo Corp., d/b/a**
**Montaldo's, Appellee.**

**No. 2:97CV00139.**
**Bankruptcy No. 95–10416C–11G.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

July 16, 1997.

Margaret Costley, Rayford Adams, III, Adams & Costley, Greensboro, NC, for Montaldo Corporation.

Kenyann Brown, Bailey & Dixon, Raleigh, NC, for Aetna Life Insurance.

MEMORANDUM OPINION

TILLEY, District Judge.

This appeal is from the United States Bankruptcy Court for the Middle District

---

of North Carolina. Appellant, Aetna Life Insurance Company (Aetna), appeals the final decision of the Bankruptcy Court allowing the Debtor's objection to Appellant's proof of claim filed June 28, 1995.

## I.

Prior to January 1, 1995, Aetna had in force group life and health insurance for employees of Montaldo's under policies which Montaldo's acquired from Aetna. However, effective January 1, 1995, Montaldo's canceled the Aetna policies and initiated a self-funded health insurance plan. At that time, Montaldo's had not paid the premiums for November and December of 1994 which equaled $65,149.27. Montaldo's filed Chapter 11 bankruptcy on February 21, 1995. Aetna filed a proof of claim for $86,022.73[1] and sought priority status pursuant to 11 U.S.C. § 507(a)(4). Montaldo's filed an objection to the priority status of Aetna's claim. The Bankruptcy Court sustained the objection and allowed Aetna's claim only as a non-priority unsecured claim. Aetna then filed this appeal.

## II.

The issue on appeal is whether Aetna's claim for unpaid insurance premiums is entitled to priority under 11 U.S.C. § 507(a)(4). Section 507(a)(4) states: "The following expenses and claims have priority in the following order: ... Fourth, allowed unsecured claims for contributions to an employee benefit plan—(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first."

The Bankruptcy Court found that the claim for unpaid insurance premiums was not entitled to priority under this provision. The Bankruptcy Court found that the premiums were not "contributions," that a policy of insurance issued by an insurer was not an "employee benefit plan," and that the premiums owed did not result from "services rendered."

Cases are divided on the issue of whether premiums owed by a debtor to an insurer providing insurance coverage on employees of the debtor constitute "contributions to an employee benefit plan within the meaning of § 507(a)(4)."[2] This Court has found no Fourth Circuit cases that deal with this issue. However, the circuit cases that have decided this issue disagree with the Bankruptcy Court's ruling. Specifically, the First Circuit ruled that an insurer was entitled to priority payment of employee group life, health, and disability insurance premiums. *In re Saco Local Develop. Corp.*, 711 F.2d 441 (1st Cir.1983). The court affirmed the bankruptcy court's ruling that the uncollected health, life, and disability insurance premiums fit within the language of

1. This amount includes the unpaid premiums ($65,149.27) and an amount owed under an agreement from 1993 to amortize the payment of $166,987.66 in overdue premiums. The amount due under the Agreement is $20,873.46. However, Judge Stocks ruled that the $20,873.46 was eliminated from priority status. Aetna does not appeal that part of the order. Therefore, only the $65,149.27 amount is at issue.

2. Cases stating that premiums do have priority include *Employers Insurance of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir. 1993) (worker's compensation insurance was "employee benefit" plan and entitled to priority); *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir.1983) (unpaid health insurance premiums entitled to priority because

they were "contributions" to an "employee benefit plan"); *In re Allegheny International, Inc.*, 138 B.R. 171 (Bankr.W.D.Pa.1992) (unpaid premiums were "contributions to an employee benefit plan"); and *In re Lummus Industries, Inc.*, 193 B.R. 615 (Bankr.M.D.Ga. 1996) (unsecured priority claim for unpaid insurance claims). Cases stating the premiums do not have priority include *In re HLM Corp.*, 62 F.3d 224 (8th Cir.1995) (unpaid prepetition insurance premiums under Minnesota's workers' compensation scheme did not constitute "contributions to an employee benefit plan") and *In re AER–Aerotron, Inc.*, 182 B.R. 725 (Bankr.E.D.N.C.1995) (insurer's claim for unpaid premiums was not entitled to priority).

§ 507(a)(4) granting priority to "unsecured claims for contributions to employee benefit plans." The court stated that "[t]o allow the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled." *Id.* at 449. The Ninth Circuit held that worker's compensation insurance was an "employee benefit" plan for purposes of priority. *Employers Ins. of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605 (9th Cir. 1993). Although the subject matter of that case was worker's compensation insurance, the court relied on *In re Saco Local Development Corp.* In an Eighth Circuit case, the court found that insurance premiums under Minnesota's worker's compensation plan did not constitute "contributions to an employee benefit plan." *In re HLM Corp.,* 62 F.3d 224 (8th Cir.1995). The court reasoned that Minnesota's worker's compensation insurance is not bargained for but is mandated by statute. However, the court did address the Ninth Circuit case, *Plaid Pantries,* and stated the Ninth Circuit had "rejected as irrelevant distinctions between statutorily-mandated insurance programs, such as worker's compensation, and contractually arrived-at insurance benefit plans, such as those for life and health." *Id.* at 227. Therefore, the court in *In re HLM Corp.* recognized a distinction between worker's compensation insurance and insurance for life and health.

The circuit courts which have ruled on this issue disagree with the ruling of the Bankruptcy Court. This Court finds the rulings of the circuit courts to be persuasive, and therefore reverses the ruling of the Bankruptcy Court.